### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA
### CASE NO.

CANDACE PADAVICK

     Plaintiffs,

v.

CITY OF MIAMI BEACH,
MIAMI BEACH POLICE OFFICER JOSEPH GONZALEZ,
MIAMI BEACH POLICE OFFICER GIORDANO CARDOSO

     Defendant.

_____/

### COMPLAINT

Plaintiff Candace Padavick files this Complaint and sues Defendants, City of Miami Beach, Miami Beach Police Officer Joseph Gonzalez and Miami Beach Police Officer Giordano Cardoso and allege as follows.

1.    This is an action for money damages on behalf of Candace Padavick whose constitutional rights were violated when she was falsely arrested.

2.    This action for damages is brought pursuant to 42 U.S.C. §§ 1983 and 1988, the First and Fourth Amendments to the United States Constitution, and the laws of the State of Florida, against the City of Miami Beach and against Joseph Gonzalez and Giordano Cardoso, the individual City of Miami Beach police officers.

### JURISDICTION AND VENUE

3.    This action arises under the constitution and laws of the United States, particularly the First and Fourth Amendments to the United States Constitution.

1

4.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sections 1331 and 1343 and on the supplemental jurisdiction of this court to entertain claims arising under state law pursuant to 28 U.S.C. Section 1367.

5.      Venue is proper in this district because the events complained of occurred in Miami Beach, Florida.

6.      All conditions precedent to the maintenance of this action have been performed or have occurred prior to its institution including those set forth in Florida Statutes Chapter 768.

## PARTIES

7.      Plaintiff Candace Padavick, (hereinafter "Ms. Padavick" or "Plaintiff") was at all times relevant to this complaint a citizen of the United States and a resident of Miami Beach, Florida.

8.       Defendant City of Miami Beach ("City") is a municipality of the State of Florida and is organized pursuant to the laws of Florida.

9.      Defendant Miami Beach Police Officers Joseph Gonzalez ("Gonzalez") and Giordano Cardoso ("Cardoso"), were at all times relevant to this complaint duly appointed and acting as police officers of the City of Miami Beach Police Department.

10.      At all material times, Defendants Gonzalez and Cardoso were acting under color of state law and color of their authority as police officers. At all times, Defendants Gonzalez and Cardoso were engaged in conduct that was the proximate cause of the violations of the Plaintiff's federally protected rights, as more particularized herein.

## STATEMENT OF FACTS

11.     At about 2:00 a.m in the early morning hours of April 15, 2013, plaintiff Candace Padavick, (hereinafter "Ms. Padavick" or "Plaintiff") hired a taxi cab to drive herself and a male friend from a location in Miami Beach to her apartment building located in Miami Beach. The taxi cab driver agreed to give them a ride to their destination. On their way to her apartment building, they stopped to purchase a pizza and offered a piece to the cab driver. Upon arriving at their destination, the cab driver informed Ms. Padavick and her friend the fare was $16.00.

12.     Ms. Padavick offered to pay the cab fare with her credit card, but the driver told her he could not accept any credit cards, despite having a credit card machine in the cab. He offered to drive them to an ATM machine. Fearing it was not safe for an unfamiliar person to drive them to an ATM at that late hour, they declined the offer and asked the driver if he would wait in front of her apartment building while they went to her apartment to retrieve cash to pay the fare. The driver agreed to wait while Ms. Padavick and her friend went to her apartment.

13.     Upon entering her apartment, she was greeted by a second friend who had been with them earlier in the evening and had returned to the apartment prior to Ms. Padavick's arrival. Ms. Padavick took the pizza she had purchased into the kitchen where she chatted with the second friend. She was unaware the friend who rode in the cab with her had walked onto the apartment balcony to smoke a cigarette.

14.     When Ms. Padavick walked from her kitchen into the living room, she did not see the friend who rode in the cab with her because the glass door to the balcony was covered by drapes.  She believed the friend had returned to the waiting cab driver to pay the fare. Ms. Padavick then went into her bathroom to take a shower. She was unaware her friend had not gone to pay the waiting cab driver.

3

15.     At some point when no one came down to pay for the fare, the cab driver decided to call the Miami Beach police for assistance in obtaining the fare. While waiting for a police officer to arrive, the driver spoke to the doorman at the front desk of plaintiff's apartment building to explain his reason for waiting. The doorman gave the cab driver a $20 bill to cover the fare.

16.     About the time the cab driver returned to his cab to leave, the defendant police officers arrived in response to the cab driver's call. The driver advised the defendant police officers his fare had been paid by the doorman. The defendant police officers advised the driver the doorman could not pay for the fare and the cab driver had to return the money. One of the defendant police officers took the $20 from the cab driver and returned it to the doorman.

17.     The defendant police officers learned Ms. Padavick's apartment number from the doorman and the defendant police officers went to her apartment.

18.     While Ms. Padavick was still in the shower, she was startled by loud banging on the door of her apartment. She quickly came out of the shower, threw on a bathrobe, and wrapped a towel on her wet hair. Wearing only the bathrobe she went to the front door, and through the peephole of the front door she saw the defendant officers standing outside her apartment door. While still standing inside her apartment, she opened the door enough to speak to the defendant police officers to find out why they were banging on her apartment door. The defendant officers told her to come out of the apartment. She informed them that she would not come out, as she was only wearing a bathrobe. She also told the officers they could not enter her apartment without a warrant. Ms. Padavick was still unaware the cab driver had not been paid.

19.     After Ms. Padavick informed the officers that she refused to leave her apartment and they were not allowed to enter her apartment, the officers pushed the door completely open. One of the defendant officers grabbed her arm and pulled her into the hallway. In an effort to

move back into her apartment Ms. Padavick pulled away from the officer's grasp. The officer yanked at her robe causing it to fall off her body; it hung from her arms. As she had no undergarments her body was completely exposed to the two male officers and the two male friends who were standing nearby. The defendant officer pushed her face forward against the apartment interior hallway wall, pinning her against the wall, causing scratches on her back and bruising on her arms. The defendant officers kept Ms. Padavick pinned against the wall without any clothes for several minutes. While Ms. Padavick was pinned against the wall, Miami Beach officers entered her apartment without the consent of Ms. Padavick and handcuffed the two male friends. She remained pinned against the wall until a defendant officer handcuffed her behind her back. She remained without any clothing. Her bathrobe remained hanging from her then handcuffed wrists.

20.     Eventually, one of the defendant officers moved her into the apartment and sat her on the floor, in handcuffs, and still without clothing except for the bathrobe hanging from her wrists. She was placed next to her two male friends who were also on the floor and in full view the male friends and all the Miami Beach officers who had entered her apartment. She sat there embarrassed as she tried to shield herself from exposure to the officers. At one point when she stood up, one of the defendant officers forcefully grabbed her by the arm and threw her face down onto the sofa. The defendant officers made no attempt to cover her. She remained in this humiliating condition for at least half an hour in plain view of the male officers who had entered and were moving about her apartment. At one point, at least eleven Miami Beach Police Officers had entered her apartment while she was fully exposed.

21.     While Ms. Padavick sat on her sofa in handcuffs, without any clothing on her, the defendant officers, searched throughout her apartment, opened drawers and looked at the interior

spaces, all without Ms. Padavick's consent. Ms. Padavick asked the defendant officers multiple times why she was being arrested. The defendant officers responded by telling her to "shut-up."

22.     The defendant officers searched through her apartment, discovered nothing and seized nothing. When the officers finished searching Ms. Padavick's apartment, they took the two handcuffed friends away and all the officers left except for two officers, who remained in the apartment with Ms. Padavick waiting for a female officer to arrive. Eventually, a female officer arrived and placed a long sheer dress over her body, including over her handcuffed arms. Unfortunately, the sheer dress the officer placed on her was insufficient to properly cover her.

23.     The defendant officers had Ms. Padavick walk from her apartment in her bare feet through the public lobby area to a police vehicle in front of the building. When Ms. Padavick arrived at the Miami Beach Police Department, she was still handcuffed in metal handcuffs behind her back and only clothed in the sheer dress, without any undergarments.  Her handcuffed arms were within the garment. At the Miami Beach Police Station, a male officer working at the station lifted Ms. Padavick's dress to her waist area, exposing her from the waist down, and changed the metal handcuffs to flex cuffs while two other officers of the Miami Beach Police Department were present. Said officers were agents and employees of CITY. No female was present. During the course of changing the cuffs and lifting Ms. Padavick's dress, all three officers were able to visually inspect the genitals, buttocks and anus of the PLAINTIFF. At all times a female police officer or other female employee of the Miami Beach Police Department was available to perform the cuff change. No supervising officer of the Miami Beach Police Department provided written authorization for the actions committed by the officers to PLAINTIFF at the Miami Beach Police Department.

24.     Ms. Padavick was then taken to another transport police vehicle where she remained for hours. She was then taken to the Miami Dade County jail facility where she was

escorted in front of male corrections officers and other inmates while wearing nothing but the sheer dress.

25.     At the jail facility, she was forced to disrobe in front of female corrections officers and she was subjected to a strip search by the officers.

26.     Ms. Padavick was booked and was falsely charged with the following criminal charges: (1) battery on a law enforcement officer; (2) resisting arrest without violence; (3) resisting arrest with violence; and (4) theft. Ms. Padavick remained in custody at the Miami-Dade jail facility holding cell for hours until bond was posted for her.

27.     On May 15, the above false charges were filed against Ms. Padavick in Florida State criminal court in case no. F13-008767, and Ms. Padavick had to retain and pay counsel to defend against these false charges.

28.     On May 20, 2014, the State Attorney dismissed all the charges against Ms. Padavick.

## CAUSES OF ACTION

## COUNT 1

## STATE FALSE ARREST/SEIZURE - DEFENDANT CITY

For her cause of action against DEFENDANT CITY in Count 1, PLAINTIFF states:

29.     PLAINTIFF realleges and adopts, as if fully set forth in Count 1, the allegations of paragraphs 1 through 28.

30.     DEFENDANTS GONZALEZ and CARDOSO proximately caused the arrest/seizure of PLAINTIFF in the absence of probable cause that PLAINTIFF committed any criminal offense.

31.     The actions of DEFENDANTS GONZALEZ and CARDOSO, in causing the arrest/seizure of PLAINTIFF in the absence of probable cause, were taken in the absence of lawful authority.

32.     The actions of DEFENDANTS GONZALEZ and CARDOSO, in causing the arrest/seizure constitute false arrest/false imprisonment of PLAINTIFF under Florida law.

33.     The false arrest/false imprisonment of PLAINTIFF was committed by DEFENDANTS GONZALEZ and CARDOSO in the course and scope of their employment as police officers for DEFENDANT CITY.

34.      As a direct and proximate result PLAINTIFF suffered physical injury, loss of her liberty and freedom, mental anguish, loss of income, costs of bond and attorney fees, loss of capacity for the enjoyment of life. She suffered grievously, was brought into public scandal with great humiliation, endured mental suffering and aggravation of her physical and mental condition and suffered damaged reputation.

WHEREFORE, PLAINTIFF prays:

   a.   Judgment for compensatory damages against DEFENDANT City in excess of $ 15,000 dollars;

   b.   Cost of suit;

   c.   Trial by jury as to issues so triable; and

   d.   Such other relief as this Honorable Court may deem just and appropriate.


## COUNT 2

## STATE TRESPASS - DEFENDANT CITY

For her cause of action against Defendant CITY in Count 2, PLAINTIFF states:

35.   PLAINTIFF realleges and adopts, as if fully set forth in Count 2, the allegations of paragraphs 1 through 28.

36.   On said date, DEFENDANTS GONZALEZ and CARDOSO were police officers and agents of the DEFENDANT CITY when they entered into and remained in the said residence without permission of any occupant or owner and without lawful authority.

37.   As a direct and proximate cause of the said trespass, PLAINTIFF suffered damages, loss of her freedom, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, medical care and treatment, and aggravation of a previously existing condition. She suffered grievously, was brought into public scandal with great humiliation, endured emotional distress in the form of shame, humiliation, degradation, mental suffering and aggravation of her physical and mental condition and suffered damaged reputation.

WHEREFORE, PLAINTIFF prays in regard to the DEFENDANT CITY:

   a.   Judgment for compensatory damages in excess of $15,000 Dollars;

   b.   Costs of suit;

    c.      Trial by jury as to issues so triable; and

    d.      Such other relief as this Honorable Court may deem just and appropriate.


## COUNT 3

## STATE INVASION OF PRIVACY - DEFENDANT CITY

For her cause of action against Defendant CITY in Count 3, PLAINTIFF states:

38.    PLAINTIFF realleges and adopts, as if fully set forth in Count 3, the allegations of paragraphs 1 through 28.

39.    On said date, DEFENDANTS GONZALEZ and CARDOSO were police officers and agents of the DEFENDANT CITY when they entered into and remained in the said residence without permission of any occupant or owner and without lawful authority.

40.    During the course of the said entering and remaining, DEFENDANTS GONZALEZ and CARDOSO examined and viewed the possessions of PLAINTIFF.

41.    At all times, PLAINTIFF had an expectation of privacy in her private and personal residence and possessions.

42.    As a direct and proximate cause of the said invasion of privacy, PLAINTIFF suffered bodily injury and resulting pain and suffering, loss of her freedom, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, medical care and treatment, and aggravation of a previously existing condition. She suffered grievously, was brought into public scandal with great humiliation, endured emotional distress in the form of shame, humiliation, degradation, mental suffering and aggravation of her physical and mental condition and suffered damaged reputation.

WHEREFORE, PLAINTIFF prays in regard to DEFENDANT CITY:

a.      Judgment for compensatory damages against DEFENDANT City in excess of $15,000 Dollars;

b.      Costs of suit;

c.      Trial by jury as to issues so triable; and

d.      Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 4

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIM BY PLAINTIFF AGAINST DEFENDANT CITY

For her cause of action against DEFENDANT CITY in Count 4, PLAINTIFF states:

43.     PLAINTIFF realleges and adopts, as if fully set forth in Count 4, the allegations of paragraphs 1-28.

44.     As a result of the actions of DEFENDANTS GONZALEZ and CARDOSO, including being handcuffed, struck by being thrown against a wall, having to expose all or parts of her body in the presence of persons including males, PLAINTIFF suffered an impact, emotional distress and psychological trauma.

45.     At all times DEFENDANTS GONZALEZ and CARDOSO were police officers and agents of the DEFENDANT CITY.

46.     The psychological trauma and emotional distress caused PLAINTIFF to suffer from severe depression, post-traumatic stress disorder and other physical and mental health injuries.

47.     As a direct and proximate result, PLAINTIFF suffered bodily injury and resulting pain and suffering, loss of her freedom, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, medical care and treatment, and aggravation of a previously

existing condition. She suffered grievously, was brought into public scandal with great humiliation, endured emotional distress in the form of shame, humiliation, degradation, mental suffering and aggravation of her physical and mental condition and suffered damaged reputation. The losses and damages are either permanent or continuing in nature and PLAINTIFF will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFF prays:

a.      Judgment for compensatory damages against DEFENDANT City in excess of $15,000;

b.      Cost of suit;

c.      Trial by jury as to issues so triable; and

d.      Such other relief as this Honorable Court may deem just and appropriate.


## COUNT 5

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

For her cause of action against DEFENDANTS GONZALEZ and CARDOSO in Count 5, PLAINTIFF states:

48.     PLAINTIFF realleges and adopts, as if fully set forth in Count 5, the allegations of paragraphs 1-28.

49.     Alternatively to the allegations in Count 3, if the conduct of DEFENDANTS GONZALEZ and CARDOSO was done intentionally, then the false accusations and verbal berating of PLAINTIFF, the false arrest of PLAINTIFF, the throwing against the wall, the handcuffing, the malicious prosecution of PLAINTIFF, the parading and exposing of the unclothed PLAINTIFF in front of others including males constituted extreme and outrageous conduct.

50.     DEFENDANTS GONZALEZ and CARDOSO through their extreme and outrageous conduct, intentionally, or, at least, recklessly caused PLAINTIFF severe emotional distress.

51.     As a direct and proximate cause of the said invasion of privacy, PLAINTIFF suffered bodily injury and resulting pain and suffering, loss of her freedom, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, medical care and treatment, and aggravation of a previously existing condition. She suffered grievously, was brought into public scandal with great humiliation, endured emotional distress in the form of shame, humiliation, degradation, mental suffering and aggravation of her physical and mental condition and suffered damaged reputation.

WHEREFORE, the PLAINTIFF prays in regard to DEFENDANTS GONZALEZ and CARDOSO:

a.      Judgment against DEFENDANTS GONZALEZ and CARDOSO for compensatory damages in excess of fifteen thousand dollars ($15,000) dollars;

b.      Judgment against DEFENDANTS GONZALEZ and CARDOSO for punitive damages in excess of fifteen thousand dollars ($15,000. dollars;

c.      Costs of suit;

d.      Trial by jury as to all issues so triable;

e.      Such other relief as this Honorable Court may deem just and appropriate.


## COUNT 6

## BATTERY CLAIM BY PLAINTIFF AGAINST DEFENDANT CITY

For her cause of action against DEFENDANT CITY, in Count 6, PLAINTIFF states:

52.     PLAINTIFF realleges and adopts, as if fully set forth in Count 6, the allegations of paragraphs 1 through 28.

53.      At the time of PLAINTIFF's arrest, she was handcuffed excessively tightly, she was thrown against a wall, pinned against a wall despite of her petite size with excessive, unnecessary and extreme force and she had offered no resistance to the actions of DEFENDANTS GONZALEZ and CARDOSO

54.     At all times DEFENDANTS GONZALEZ and CARDOSO were acting under the authority of the State of Florida and under color of law as police officers of the CITY, and in such capacity, as agents, servants, and employees of the CITY.

55.     That course of conduct of the DEFENDANTS was harmful or offensive and occurred without PLAINTIFF's consent.

56.     These handcuffing of PLAINTIFF excessively tightly, throwing her against a wall pinning her against a wall are offensive touchings which are not ordinary incidents of arrest.

57.     The conduct of DEFENDANTS GONZALEZ and CARDOSO was done intentionally to cause harmful or offensive contact with PLAINTIFF.

58.     A battery is defined as an unlawfully touching or striking or the use of force against the person of another with the intention of bringing about a harmful or offensive contact or apprehension thereof.

59.     The force used in the batteries in this case exceeded the amount of force as reasonably appeared necessary to carry out the duties and responsibilities of that officer.

60.     The battery occurred with great force and excessive use of force causing the PLAINTIFF bodily injury.

61.    As a direct and proximate result of the batteries and excessive use of force, PLAINTIFF suffered grievously, has been brought into public scandal, and with great humiliation, mental suffering and damaged reputation.

62.    As a further direct and proximate result of the said battery and excessive use of force, PLAINTIFF further suffered mental anguish, endured suffering and aggravation of her physical and mental condition and suffered a damaged reputation, loss of capacity for the enjoyment of life, humiliation personally, and damage to her reputation.

WHEREFORE, PLAINTIFF prays:

a.    Judgment for compensatory damages against DEFENDANT CITY for compensatory damages in excess of fifteen thousand dollars ($15,000) dollars;

b.    Costs of suit;

c.    Trial by jury as to all issues so triable; and

d.    Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 7

## SECTION 1983 FALSE ARREST - DEFENDANTS GONZALEZ and CARDOSO

For her cause of action against DEFENDANTS GONZALEZ and CARDOSO in Count 7, PLAINTIFF states:

63.    PLAINTIFF realleges and adopts as if fully set forth in Count 7, the allegations of paragraphs 1 through 28.

64.    DEFENDANTS GONZALEZ and CARDOSO subjected PLAINTIFF to the deprivation of the rights and privileges secured to her by the Constitution of the United States including the constitutional right not to be deprived of liberty and to be free from unlawful arrest under the Fourth Amendment within the meaning of 42 U.S.C. § 1983.

65.     With regard to the violations of the constitutional rights of PLAINTIFF as alleged in this count, the actions of DEFENDANTS GONZALEZ and CARDOSO were done with malicious intent, ill will, spite, intent to injure, evil motive, wickedness, formed design to injure or oppress PLAINTIFF and were done with a reckless or callous indifference to the federally protected rights of PLAINTIFF.

66.     As a direct and proximate result of the acts described above, PLAINTIFF suffered great humiliation, mental suffering, and damaged reputation, including business reputation/goodwill.

67.     As a further direct and proximate result of the conduct of DEFENDANTS GONZALEZ and CARDOSO, PLAINTIFF suffered loss of her liberties and freedom, mental anguish, loss of income, costs of bond, and loss of capacity for the enjoyment of life. The losses of PLAINTIFF are either permanent or continuing and PLAINTIFF will suffer the losses in the future, in violation of the civil and constitutional rights of PLAINTIFF.

WHEREFORE, PLAINTIFF prays:

a.     Judgment for compensatory damages against DEFENDANTS GONZALEZ and CARDOSO in excess of $ 15,000 dollars;

b.     Judgment for exemplary damages against DEFENDANTS GONZALEZ and CARDOSO;

c.     Cost of suit;

d.     Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

e.     Trial by jury as to issues so triable; and

f.     Such other relief as this Honorable Court may deem just and appropriate.

**COUNT 8**

**SECTION 1983 ILLEGAL SEARCH - DEFENDANTS GONZALEZ and CARDOSO**

For her cause of action against DEFENDANTS GONZALEZ and CARDOSO in Count 8, PLAINTIFF states:

68.     PLAINTIFF realleges and adopts as if fully set forth in Count 8, the allegations of paragraphs 1 through 28.

69.     The entry of DEFENDANTS GONZALEZ and CARDOSO into the residence of PLAINTIFF was done without any legal right.

70.     The actions of DEFENDANTS GONZALEZ and CARDOSO constitute an unlawful search of the property and residence of PLAINTIFF in violation of her Fourth Amendment rights within the meaning of 42 U.S.C. § 1983.

71.     With regard to the violations of the constitutional rights of PLAINTIFF as alleged in this count, the actions of DEFENDANTS GONZALEZ and CARDOSO were done with malicious intent, ill will, spite, intent to injure, evil motive, wickedness, formed design to injure or oppress PLAINTIFF and were done with a reckless or callous indifference to the federally protected rights of PLAINTIFF.

72.     As a direct and proximate result of the acts described above, in violation of 42 U.S.C. § 1983, PLAINTIFF suffered grievously, has been brought into public scandal, and with great humiliation, mental suffering, and damaged reputations, including business reputation/goodwill.

73.     As a further direct and proximate result of the conduct of DEFENDANTS GONZALEZ and CARDOSO, PLAINTIFF suffered mental anguish, loss of income, costs of bond and loss of capacity for the enjoyment of life. The losses are either permanent or continuing and PLAINTIFF will suffer the losses in the future, in violation of the civil and constitutional rights of PLAINTIFF.

WHEREFORE, PLAINTIFF prays:

      a.    Judgment for compensatory damages against DEFENDANTS GONZALEZ and CARDOSO in excess of $ 15,000 dollars;

      b.    Judgment for exemplary damages against DEFENDANTS GONZALEZ and CARDOSO;

      c.    Cost of suit;

      d.    Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

      e.    Trial by jury as to issues so triable; and

      f.    Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 9
## SECTION 1983 FIRST AMENDMENT RETALIATION
## DEFENDANTS GONZALEZ AND CARDOSO

For her cause of action against DEFENDANTS GONZALEZ and CARDOSO in Count 9, PLAINTIFF states:

74.    PLAINTIFF realleges and adopts as if fully set forth in Count 9, the allegations of paragraphs 1 through 28, 30-33, 36, 39-41, 44-45, 49-50 and 53-60.

75.    The arrest of PLAINTIFF by DEFENDANTS GONZALEZ and CARDOSO as alleged in Count 1 which is fully incorporated herein was in retaliation for PLAINTIFF's statement to them that she would not leave her apartment and that the officers were not allowed to enter her apartment without a warrant, and in the absence of probable cause that PLAINTIFF committed any criminal offense. *Davis v. Williams,* 451 F.3d 759, 767 (11th Cir. 2006).

76.    The infliction of mental distress of PLAINTIFF. by DEFENDANTS GONZALEZ and CARDOSO as alleged in Counts 4 and 5 which are fully incorporated herein was in retaliation for PLAINTIFF's statement to them that she would not leave her apartment and that

the officers were not allowed to enter her apartment without a warrant, and in the absence of probable cause that PLAINTIFF committed any criminal offense. *Davis v. Williams,* 451 F.3d 759, 767 (11th Cir. 2006.).

77.     The battery of PLAINTIFF by DEFENDANTS as alleged in Count 6 which is fully incorporated herein was in retaliation for PLAINTIFF's statement to them that she would not leave her apartment and that the officers were not allowed to enter her apartment without a warrant, and in the absence of probable cause that PLAINTIFF committed any criminal offense. *Davis v. Williams,* 451 F.3d 759, 767 (11th Cir. 2006).

78.     The invasion of privacy and trespass of PLAINTIFF by DEFENDANTS GONZALEZ and CARDOSO as alleged in Counts 2 and 3 which are fully incorporated herein was in retaliation for PLAINTIFF's statement to them that she would not leave her apartment and that the officers were not allowed to enter her apartment without a warrant, and in the absence of probable cause that PLAINTIFF committed any criminal offense. *Davis v. Williams,* 451 F.3d 759, 767 (11th Cir. 2006).

79.     The conduct of DEFENDANTS GONZALEZ and CARDOSO towards PLAINTIFF constitutes unlawful retaliation in violation of PLAINTIFF's clearly established rights under the First and Fourteenth Amendments and 42 U.S.C. § 1983 and would likely deter a person of ordinary firmness from the exercise of First Amendment rights.

80.     As a direct and proximate result of the acts described above, in violation of 42 U.S.C. § 1983, PLAINTIFF has suffered grievously, has been brought into public scandal, and with great humiliation, mental suffering, and damaged reputation, including business reputation/goodwill.

81.     As a further direct and proximate result of the conduct of GONZALEZ and CARDOSO, PLAINTIFF suffered loss of her liberty and freedom, mental anguish, loss of

income, costs of bond, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing and PLAINTIFF will suffer the losses in the future, in violation of her constitutional and civil rights.

WHEREFORE, PLAINTIFF prays:

a.      Judgment for compensatory damages against DEFENDANTS GONZALEZ and CARDOSO in excess of $ 15,000 dollars;

b.      Judgment for exemplary damages against DEFENDANTS GONZALEZ and CARDOSO;

c.      Cost of suit;

d.      Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

e.      Trial by jury as to issues so triable; and

f.      Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 10

## SECTION 901.211 CLAIM - DEFENDANT CITY

For her cause of action against DEFENDANT CITY in Count 10, PLAINTIFF states:

82.    PLAINTIFF realleges and adopts as if fully set forth in Count 10, the allegations

of paragraphs 1 through 28.

83.    Section 901.211(1), Florida Statutes, states that

[T]he term "strip search" means having an arrested person remove or arrange
some or all of his or her clothing so as to permit a visual or manual inspection of
the genitals; buttocks; anus; breasts, in the case of a female; or undergarments of
such person.

84.    Section 901.211(3), Florida Statutes, states:

Each strip search shall be performed by a person of the same gender as the
arrested person and on premises where the search cannot be observed by persons
not physically conducting or observing the search pursuant to this section. Any
observer shall be of the same gender as the arrested person.

85.    Section 901.211(5), Florida Statutes, states:

No law enforcement officer shall order a strip search within the agency or facility
without obtaining the written authorization of the supervising officer on duty.

86.    The strip search of PLAINTIFF conducted by the CITY violated Section 901.211,

Florida Statutes, and the rights of PLAINTIFF thereunder.

87.    As a direct and proximate result of the acts described above, in violation of 42

U.S.C. § 1983, PLAINTIFF has suffered grievously, has been brought into public scandal, and

with great humiliation, mental suffering, and damaged reputation, including business

reputation/goodwill.

88.    As a further direct and proximate result of the conduct of GONZALEZ and

CARDOSO, PLAINTIFF suffered loss of her liberty and freedom, mental anguish, loss of

income, costs of bond, and loss of capacity for the enjoyment of life. The losses are either

permanent or continuing and PLAINTIFF will suffer the losses in the future, in violation of her constitutional and civil rights.

WHEREFORE, PLAINTIFF prays:

a)        Judgment against CITY for compensatory damages in excess of fifteen thousand dollars ($15,000) dollars;

b)    Costs of suit;

c)    Trial by jury as to all issues so triable;

d)    Such other relief as this Honorable Court may deem just and appropriate.


## COUNT 11

## MALICIOUS PROSECUTION CLAIM BY PLAINTIFF AGAINST DEFENDANTS GONZALEZ and CARDOSO

For her cause of action against DEFENDANTS GONZALEZ and CARDOSO, in Count 11, PLAINTIFF states:

89.    PLAINTIFF realleges and adopts, as if fully set forth in Count 11, the allegations of paragraphs 1 through 28.

90.    On or about April 15, 2013, and thereafter, DEFENDANTS GONZALEZ and CARDOSO, proximately caused criminal proceedings to be instituted or continued against PLAINTIFF with malice and in the absence of probable cause that PLAINTIFF had committed any criminal offense by causing documents to be submitted to the State Attorney and making statements to the State Attorney, the prosecuting authority, containing false information and material omissions.

91.    At all times material hereto, DEFENDANTS GONZALEZ and CARDOSO knew their documents and statements, sworn and unsworn, would be submitted to the State Attorney

and would be relied upon by the State Attorney for the institution and continuation of criminal proceedings against PLAINTIFF.

92.     Subsequently, the State Attorney proceeded against PLAINTIFF for the charges for which she had been arrested pursuant to the documents provided by DEFENDANTS GONZALEZ and CARDOSO

93.     Subsequently, the criminal proceedings against PLAINTIFF were completely terminated in her favor on or about May 20, 2014, by the dismissal of the charges by the State Attorney.

94.     No probable cause existed for the prosecution of PLAINTIFF for any charge.

95.     No reasonably cautious person in the position of DEFENDANTS GONZALEZ and CARDOSO, would have believed PLAINTIFF was guilty-in fact of any criminal offense.

96.     With regard to this count, the prosecution was initiated with the presence of malice, fraud, reckless disregard for the truth, deliberate violence or oppression or with such gross negligence as to indicate wanton disregard for the rights of PLAINTIFF, to wit: DEFENDANTS GONZALEZ and CARDOSO knew no probable cause existed for the initiation of prosecution of PLAINTIFF.

97.     As a direct and proximate result of the malicious prosecution of PLAINTIFF, she suffered grievously, was brought into public scandal with great humiliation, endured mental suffering and aggravation of her physical and mental condition and suffered a damaged reputation.

98.     As a further direct and proximate result of the malicious prosecution of PLAINTIFF, she further suffered mental anguish, loss of capacity for the enjoyment of life, court related and travel expenses, humiliation personally, damage to reputation, and loss of her freedom.

WHEREFORE, PLAINTIFF prays:

a)      Judgment for compensatory damages in excess of $15,000 against DEFENDANTS GONZALEZ and CARDOSO;

b)      Exemplary damages against DEFENDANTS GONZALEZ and CARDOSO;

c)      Costs of suit;

d)      Trial by jury as to all issues so triable;

e)      Such other relief as this Honorable Court may deem just and appropriate.


## COUNT 12

## STATE FAILURE TO TRAIN & SUPERVISE - DEFENDANT CITY

For her cause of action against DEFENDANT CITY in Count 10, PLAINTIFF states:

99.      PLAINTIFF realleges and adopts as if fully set forth in Count 10, the allegations of paragraphs 1 through 28, 30-33, 36, 39-41, 44-45, 53-60 and 83-86.

100.     The negligent failure of the DEFENDANT CITY to supervise and train its agents, employees, officers, and servants was a direct causal link, caused, actually caused, or was closely related to the illegal detention of PLAINTIFF as alleged in Count 1 which is fully incorporated herein, the illegal trespass of the residence of PLAINTIFF as alleged in Count 2 which is fully incorporated herein, the invasion of privacy of PLAINTIFF as alleged in Count 3 which is fully incorporated herein, the infliction of emotional distress of PLAINTIFF as alleged in Count 4 which is fully incorporated herein, the illegal commission of a battery of PLAINTIFF as alleged in Count 6, the violation of §901.211 as to PLAINTIFF as alleged in Count 10 which is fully incorporated herein, in the absence of probable cause or any legal reason and was taken in the absence of lawful authority.

101.     As a direct and proximate result of the acts described above, PLAINTIFF was

injured in and about her body and extremities, suffered pain therefrom, incurred medical expenses for the treatment of the injuries, suffered physical handicaps and her working abilities were impaired. The injuries are either permanent or continuing in nature and she will suffer the losses and impairment in the future. She has suffered loss of her liberty and freedom, mental anguish, loss of income, loss of abilities to earn money, loss of earnings and costs of bond.

102.    As a further direct and proximate result, PLAINTIFF has suffered grievously, has been brought into public scandal and with great humiliation, mental suffering and damaged reputation. As a further direct and proximate result PLAINTIFF suffered loss of capacity for the enjoyment of life, and loss of her freedom.

WHEREFORE, PLAINTIFF prays:

a.    Judgment for compensatory damages against DEFENDANT City in excess of $ 15,000 dollars;

b.    Cost of suit;

c.    Trial by jury as to issues so triable; and

d.    Such other relief as this Honorable Court may deem just and appropriate.

GARY KOLLIN, P.A.
Counsel for PLAINTIFF
CANDACE PADAVICK

1856 N. Nob Hill Road, Suite 140
Ft. Lauderdale, FL 33322
Telephone:    (954) 723-9999
Fax:               (954) 791-6565
garykollin@garykollinlaw.com

By: /s/ Gary Kollin
Florida Bar No. 282431

25

KENNETH SWARTZ
Counsel for PLAINTIFF
CANDACE PADAVICK

SWARTZ LAW FIRM
14 NE 1st Ave Ste. 1211
Miami, FL 33132-2452
Telephone:      (305) 579-9090
ken@swartzlawyer.com

By: /s/ Kenneth Swartz
Florida Bar No. 331929